## SANPETE COUNTY v. SANPETE COUNTY DRAINAGE DISTRICT NO. 1.

No. 4422.   Decided July 29, 1926.   (248 P. 479.)

1. DRAINS—DRAINAGE DISTRICT HELD NOT LIABLE TO COUNTY FOR SERVICES RENDERED BY COUNTY ASSESSOR AND TREASURER IN COLLECTING DRAINAGE TAXES LEVIED BY THE DISTRICT (COMP. LAWS 1917, §§ 1559-1562, AND SECTION 2057, AS AMENDED BY LAWS 1921, c. 47). Drainage district *held* not liable to county for services of assessor and treasurer of county in collecting drainage taxes levied by district, pursuant to Comp. Laws 1917, § 2057, as amended by Laws 1921, c. 47, notwithstanding Comp. Laws 1917, §§ 1559-1562, providing for apportionment of salaries of said officers among expressly named political divisions in county, but wherein drainage districts are not named.

Corpus Juris-Cyc. References:
[1]   Drains 19 C. J. p. 754 n. 69.

Appeal from District Court, Seventh District, Sanpete County; *Dilworth Woolley*, Judge.

Action by Sanpete County against the Sanpete County Drainage District No. 1. Judgment for defendant, and plaintiff appeals.

AFFIRMED.

*L. R. Christensen*, of Mt. Pleasant, for appellant.

*A. H. Christenson*, of Provo, for respondent.

THURMAN, J.

Plaintiff seeks by this action to recover judgment for the services rendered by the assessor and treasurer of Sanpete county in connection with the collection of drainage taxes levied by the defendant district for the years 1921 to 1925, inclusive. The total amount sued for by plaintiff is $1,163.94.

The defendant filed a general and special demurrer to the complaint, and moved to strike a certain paragraph therefrom as irrelevant and immaterial. The trial court sustained the general demurrer. Plaintiff elected to stand on its complaint, and judgment was entered dismissing the action. Plaintiff appeals.

It is unnecessary either to quote the complaint at length or state it in substance. It is sufficient to say the complaint states a cause of action if the statutes of the state authorize payment for the services, for the complaint alleges that the services were actually rendered.

The plaintiff relies on certain statutes referred to in its brief, to wit: Comp. Laws Utah 1917, §§ 1559, 1560, and 1561, which read as follows:

"1559. On the first Monday in December, 1903, and semiannually thereafter, on the first Monday in June and December of each year, it shall be the duty of the county auditor of each county to prepare

a full and complete itemized statement, verified under oath, of all warrants drawn by him since the date of the last statement, for the salaries of the county assessor and his deputies and assistants, and for the salaries of the county treasurer and his deputies and assistants. Such statement shall set forth in detail the number of each warrant so drawn, the date of same, the name of the person or persons in whose favor drawn, and the nature of the service rendered.

"1560. The county auditor shall thereupon apportion the said total amount so ascertained to each taxing fund or district appearing on the tax rolls of the county, omitting special tax levies of school districts, in the proportion that the total tax assessed to such taxing fund or district bears to the total taxes assessed on the entire roll of the county, omitting the special taxes assessed for school districts; provided, that the sum so apportioned to the state and state school funds shall be borne and paid by the state, the amounts so apportioned to the county and county school funds shall be borne and paid by the county, and the amount so apportioned to cities of the first and second class and the schools of said cities of the first and the second class shall be borne and paid by said cities of the first and second class, and the amounts so apportioned to cities of the third class and incorporated towns shall be borne and paid by said cities of the third class and incorporated towns.

"1561. Said statement shall also show the total tax assessed to each taxing fund or district, not including special tax levies of school districts, and the sum apportioned to each such taxing fund or district as herein provided, and a copy of said statement shall be filed by the county auditor with the state auditor, and the auditor, recorder, or clerk of each city or town within the county, who shall thereupon, unless he find the same to be incorrect, draw his warrant in favor of the treasurer of the county filing said statement in the sum shown by said statement to be due the said county from said state, city, or town."

Defendant contends that the statute quoted does not now and never did have "any relation or reference to drainage districts." That is the sole question to be determined. There is another statute necessary to be considered in connection with the sections above quoted. Section 2057, Drainage Law, as amended in Session Laws of 1921, at page 133, provides:

"It shall be the duty of the county assessor to place upon the assessment roll drainage district taxes as certified by the board of supervisors. It shall be the duty of the county treasurer to collect such

taxes at the same time and in the same manner that the county taxes are collected, and pay the same to the treasurer of the board of supervisors as soon as moneys are received by him. It shall be the further duty of the county treasurer after the first day of December and prior to the last day of December of each year, to make a written report to the treasurer of each drainage district located within the county, setting forth the amount of taxes paid and the amount of delinquent taxes levied by the district for the current year, and giving in detail the names of delinquent landowners and the descriptions of the lands upon which such taxes are delinquent."

While the statute last quoted imposes the duty upon the county assessor of placing upon the assessment roll drainage taxes levied by the district, and also imposes upon the county treasurer the duty of collecting the taxes at the same time and in the same manner that county taxes are collected, it does not require the district to pay for such services. Unless the sections first above quoted considered in connection with the last support the contention of plaintiff the court will be compelled to hold that the trial court committed no error in sustaining defendant's demurrer to the complaint and dismissing the action.

A brief analysis of the sections first quoted above shows that section 1559 makes it the duty of the county auditor, in June and December of each year, to prepare an itemized statment of all warrants drawn by him since the last statement for the salaries of county assessor and his assistants, and for the salaries of the county treasurer and his assistants, etc. The purpose of this section is fully disclosed by the two sections next following. Section 1560 makes it the duty of said officer to apportion the expenses referred to in the preceding section to each taxing fund or district appearing on the tax rolls of the county in the proportion that the total tax assessed to such taxing fund or district bears to the total taxes assessed on the entire roll of the county. Then follows express mention of the various political divisions among which the expense above referred to is apportioned. That apportioned to the state and state school fund must be paid by the state, that apportioned to the county and

county school fund must be paid by the county, that apportioned to cities of the first and second class and to the schools of said cities must be paid by said cities, and that apportioned to cities of the third class and incorporated towns must be paid by said cities and towns. Special taxes for school districts are expressly omitted from the apportionment mentioned in this section, but it is provided in section 1562 that special school taxes shall be assessed and collected as already provided by law, and that the school district shall pay the county therefor one-half of 1 per cent on the amount of taxes collected, which shall be in full for the services rendered in assessing, collecting and paying said taxes. Drainage districts are not expressly mentioned among the organizations to which the expenses are apportioned, nor are they expressly excluded. Special school taxes for school districts are expressly excluded from the apportionment, but, as we have shown, the school districts are elsewhere required to pay for such services one-half of 1 per cent on the amount of taxes collected. Drainage districts are not expressly required by any statute to pay for such services. "The expression of one thing excludes another." It seems to the court that this is a case in which the maxim applies. The Legislature with great particularity has expressly mentioned every organization which it intended to charge with the payment of the expenses in question, and nowhere imposes a charge upon drainage districts.

If the foregoing considerations are not sufficient to convince our understanding, what is said in section 1561 ought to put the question beyond a reasonable doubt. By that section the county auditor is required to file a statement of the apportionment with the auditor of the state, and the auditor, recorder, or clerk of each city or town within the county, who shall thereupon draw his warrant in favor of the county for the amount unless he finds the statement to be incorrect. The fact that no statement is required to be filed with any officer of the drainage district is of deep significance.

Reference is made to many other statutes of the state with the view of aiding the court in ascertaining the meaning of the statutes we have quoted. It is questionable whether it is necessary to prolong the discussion. It is of some interest, however, to make brief reference to one or two features of the statutes to which reference has been made. The first drainage act was passed in 1896 (Laws 1896, c. 132). It provided for a uniform assessment upon all lands in the district and for collection of the taxes by the county treasurer, 99 per cent of which was to be paid to the treasurer of the district and 1 per cent retained by the county treasurer for assessing and collecting. In 1907 this law was amended (Laws 1907, c. 108), providing for assessing the lands of the district in proportion to the benefits that each tract of land would receive from the maintenance of the drainage system. Notwithstanding the amendatory act continued the provision for collecting the taxes by the county treasurer, the 1 per cent provision for payment for such service was nevertheless omitted and no substitute therefor was enacted.

Sections 1559 to 1561 inclusive, upon which the plaintiff relies, were enacted in 1903. The significant question is, If these sections were intended by the Legislature to include drainage districts, why did not the Legislature repeal the 1 per cent allowed for collection in the drainage act of 1896? Did it intend double taxation against such districts? No one has the temerity to make such contention. In the next session following, to wit, in 1905 (Laws 1905, c. 124), the Legislature re-enacted the drainage law with amendments, but left the 1 per cent provision intact. Why did it do that if sections 1559 to 1561, inclusive, were intended to take its place? Again the drainage act was re-enacted and amended in 1907, at which time the 1 per cent provision for collecting was dropped and no substitute enacted therefor. Finally, the proposition seems incontrovertible that if the Legislature in 1907, when it dropped the 1 per cent provision, had intended that sections 1559 to 1561, inclusive,

should apply to drainage districts, it would have amended those sections in such manner as to leave the question free from doubt. It would have expressly mentioned drainage districts as it did the other political organizations named therein.

For the foregoing reasons we are led to the conclusion that the sections of the statute relied on by plaintiff do not apply to drainage districts but have reference only, as contended by defendant, "to taxing districts or divisions of the county for which taxes are levied upon the property within the county or division thereof, as assessed by the county assessor for taxation purposes as understood by the general revenue acts of the state."

Counsel for plaintiff insists that the demand is just and equitable. Such considerations sometimes bear upon the question of legislative intent. In a case of this kind, however, it is not difficult to see that the Legislature may have been influenced by sound reasons of public policy in relieving drainage districts of the burden in question. In the first place, the additional expense of collecting the tax by the county treasurer while collecting other taxes under the revenue laws of the state should not entail much additional labor and expense. In the second place, bringing into cultivation new tracts of land which may have been practically worthless before and subjecting them to taxation for revenue purposes on the bases of their increased value may have been the impelling motive on the part of the Legislature for the legislation to which we have referred. In any event, without further speculating on the motives of the Legislature, the court is of opinion that the law as it now stands does not authorize the claim upon which plaintiff relies, and for that reason the complaint fails to state a cause of action.

Judgment affirmed, at appellant's cost.

GIDEON, C. J., and FRICK, CHERRY, and STRAUP, JJ., concur.